John Shaeffer (State Bar No. 138331)
jshaeffer@lathropgage.com
Jeffrey Grant (State Bar No. 218974)
jgrant@lathropgage.com
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, CA  90067
Tel: (310) 784-4600   Fax:  (310) 784-4601

R. Cameron Garrison (admitted *pro hac vice*)
cgarrison@lathropgage.com
David R. Barnard (admitted *pro hac vice*)
dbarnard@lathropgage.com
Travis W. McCallon *(*admitted *pro hac vice)*
tmccallon@lathropgage.com
LATHROP & GAGE LLP
Kansas City, MO  64108
Tel: (816) 292-2000   Fax:  (816) 292-2001

Petty Tsay Rader (State Bar No. 227563)
petty.rader@munchkin.com
MUNCHKIN, INC.
16689 Schoenborn Street
North Hills, CA  91343
Tel: (818) 893-5000   Fax:  (818) 893-6343

Attorneys for Plaintiff MUNCHKIN, INC.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNCHKIN, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PLAYTEX PRODUCTS, LLC,<br><br>　　　　Defendant.<br><br>PLAYTEX PRODUCTS, LLC,<br><br>　　　　Counter-Plaintiff,<br><br>　　vs.<br><br>MUNCHKIN, INC.,<br><br>　　　　Counter-Defendant. | Case No. CV 11-0503 AHM (RZX)<br><br>Honorable A. Howard Matz<br><br><br>**PLAINTIFF MUNCHKIN'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES, NON-TAXABLE EXPENSES, AND PREJUDGMENT INTEREST; MEMORANDUM IN SUPPORT**<br><br>**[PUBLICLY FILED VERSION]**<br><br>Hearing Date:　September 17, 2012<br>Hearing Time:　10:00 a.m.<br><br>Action Filed:　　January 18, 2011 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 17, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable A. Howard Matz United State District Court Judge, in Courtroom 14 of the above-entitled Court, Plaintiff Munchkin, Inc. ("Munchkin") will and hereby does move for an award of its attorneys' fees and non-taxable expenses incurred in this action, as well as an award of prejudgment interest on the monetary damages awarded by the jury.

Good cause exists to grant this Motion pursuant to 15 U.S.C. § 1117(a), Fed. R. Civ. P. 54, and this Court's inherent authority and discretion.  For the reasons set forth more fully in the attached Memorandum of Points and Authorities, Munchkin is entitled to its attorneys' fees, non-taxable expenses, and prejudgment interest on the grounds that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a) as a result of Playtex's deliberate false advertising, litigation conduct, and bad faith pursuit of its claims.  Munchkin further submits that the amount of its fee application is reasonable in all respects.

This motion is based upon this notice of motion and motion, the attached memorandum of points and authorities, the declarations and other evidence filed concurrently herewith, the pleadings and other records on file in this action, and on such further evidence and arguments as the Court may consider at or before the hearing on this motion. This motion is made following the conference of counsel pursuant to Local Rule 7-3, as set forth in paragraph 28 of the concurrently filed declaration of R. Cameron Garrison.

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

DATED:  August 16, 2012                    LATHROP & GAGE LLP

By: /s/ Jeffrey Grant

Cameron Garrison (*pro hac vice*)
David R. Barnard (*pro hac vice*)
Travis W. McCallon (*pro hac vice*)
John Shaeffer
Jeffrey Grant
Petty Tsay Rader
Attorneys for Plaintiff

MUNCHKIN, INC.

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    CASE BACKGROUND ..............................................................1

III.   LEGAL STANDARDS ...............................................................3

IV.   ARGUMENT ..............................................................................4

     A.    This Case Is An "Exceptional" Case Entitling Munchkin to Its
          Reasonable Attorneys' Fees ...............................................4

          1.    The Jury Found Deliberate False Advertising ...........4

          2.    Playtex's Litigation Conduct and Bad Faith Pursuit of
               Its Claims Further Support an Award of Attorneys' Fees ........6

     B.    Munchkin's Fee Application Is Reasonable ......................11

          1.    Reasonable Hourly Rates .........................................12

          2.    Reasonable Amount of Hours...................................15

          3.    Additional Factors Justifying Munchkin's Fees .......18

     C.    Munchkin Is Entitled to Its Reasonable Non-Taxable Expenses........19

     D.    Munchkin Is Also Entitled to Fees and Costs Billed by the
          R. Rex Parris Firm................................................................22

     E.    Munchkin Is Entitled to An Award of Prejudgment Interest .............23

V.    CONCLUSION.........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agster v. Maricopa County*,
   486 F. Supp. 2d 1005 (D. Ariz. Mar. 30, 2007) ...........................................19, 20

*Am. Honda Motor Co. v. Two Wheel Corp.*,
   918 F.2d 1060 (2d Cir. 1990) .....................................................................23

*Autodesk, Inc. v. Flores*,
   No. 10-CV-1917, 2011 WL 1884694 (N.D. Cal. May 18, 2011) ......................14

*B & H Mfg. Co., Inc. v. Lyn E. Bright*,
   No. 01-CV-6619, 2006 WL 547975 (E.D. Cal. Mar. 3, 2006)......................19, 20

*Brooktree Corp. v. Adv. Micro Devices, Inc.*,
   757 F. Supp 1101 (S.D. Cal. 1990).................................................................24

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) .......................................................................18

*Camacho v. Bridgeport Financial, Inc.*,
   523 F.3d 973 (9th Cir. 2008) .........................................................................12

*Cyclone USA, Inc. v. LL & C Dealer Services, LLC*,
   No. 03-CV-992, 2010 WL 2104963 (C.D. Cal. May 24, 2010)........................17

*DiBella v. Hopkins*,
   407 F. Supp. 2d 537 (S.D.N.Y. 2005) ............................................................20

*Drumm v. Morningstar, Inc.*,
   695 F.Supp.2d 1014 (N.D. Cal. 2010)............................................................23

*Earthquake Sound Corp. v. Bumper Industries*,
   352 F.3d 1210 (9th Cir. 2003) .....................................................................3, 4

*Erase, LLC v. Spansion, Inc.*,
   No. 10-CV-481, 2010 WL 5093945 (N.D. Tex. Nov. 10, 2010) ................20, 21

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) .......................................................................15

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

*Gillette Co. v. Wilkinson Sword, Inc.*,
    795 F. Supp. 662 (S.D.N.Y. 1991) ................................................................23

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
    874 F.2d 431 (7th Cir. 1989) .....................................................................24

*Gracie v. Gracie*,
    157 Fed. Appx. 967, 2005 WL 3037448 (9th Cir. 2005) ...................................17

*Gracie v. Gracie*,
    217 F.3d 1060 (9th Cir. 2000) ................................................................5, 17

*Grove v. Wells Fargo Financial California, Inc.*,
    606 F.3d 577 (9th Cir. 2010) ...........................................................3, 19, 22

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ....................................................................4, 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...............................................................................16

*In re Hayes Microcomputer Products, Inc. Pat. Litig.*,
    766 F. Supp. 818 (N.D. Cal. 1991) *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992)........24

*In re Immune Response*,
    497 F. Supp. 2d ....................................................................................21

*Intamin, Ltd. v. Magnetar Technologies Corp.*,
    No. 04-CV-511, 2009 WL 5215393 (C.D. Cal. Dec. 28, 2009)...................13, 14

*Intel Corp. v. Terabyte Intern., Inc.*,
    6 F.3d 614 (9th Cir. 1993) ...................................................................11, 12

*James v. Cardinal Health 200 Inc.*,
    No. 09-CV-695, 2010 WL 4796931 (C.D. Cal. Nov. 22, 2010) ..................12, 15

*Jardin v. DATAllegro, Inc.*,
    08-CV-1462, 2011 WL 4835742 (S.D. Cal. Oct. 12, 2011)........................20, 21

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ..................................................................12, 18

*Ko Olina Development, LLC v. Centex Homes*,
    No. 09-CV-272, 2011 WL 1235548 (D. Hawai'i Mar. 29, 2011) .......................20

iii

*Love v. Mail on Sunday*,
    No. 05-CV-7798, 2007 WL 2709975 (C.D. Cal. Sept.7, 2007).......13, 15, 17, 18

*National Products, Inc. v. Gamber-Johnson LLC*,
    734 F. Supp. 2d 1160 (W.D. Wash. 2010) ...........................................5

*National Warranty Ins. Co. v. Greenfield*,
    No. 97-CV-1654, 2001 WL 34045734 (D. Or. Feb. 8, 2001) ....................19, 21

*O'Brien Intl., Inc. v. Mitch, et al.*,
    209 U.S.P.Q. 212 (N.D. Cal. 1980) ...................................................11

*Presidio Components Inc. v. Am. Technical Ceramics Corp.*,
    723 F. Supp. 2d 1284 (S.D. Cal. 2010) ............................................24

*R.J. Reynolds Tobacco Co.*,
    75 U.S.P.Q.2d 1206 (N.D. Ill. 2005) .................................................23

*Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*,
    668 F.3d 677 (9th Cir. 2012) ...........................................................4

*Seven Signatures General Partnership v. Irongate Azrep BW LLC*,
    No. 11-CV-500, 2012 WL 1656972 (D. Hawai'i May 9, 2012).....................20

*Societe Civile Succession Richard Guiono v. Beseder Inc.*,
    No. 03-CV-1310, 2007 WL 3238703 (D. Ariz. Oct. 31, 2007) ....................4, 5

*Spalding Laboratories, Inc. v. Arizona Biological Control, Inc.*,
    No. 06-CV-1157, 2008 WL 2227501 (C.D. Cal. May 28, 2008).....................11

*Stephen W. Boney, Inc. v. Boney Services, Inc.*,
    127 F.3d 821 (9th Cir. 1997) ...........................................................6

*Thalheimer v. City of San Diego*,
    No. 09-CV-2862, 2012 WL 1463635 (S.D. Cal. April 16, 2012)...............20, 21

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ...........................................................4, 5

*U-Haul Intern., Inc. v. Jartran, Inc.*,
    793 F.2d 1034 (9th Cir. 1986) .........................................................3

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    205 F.3d 1219 (10th Cir. 2000) .......................................................23

iv

*West Virginia v. U.S.*,
　　479 U.S. 305 (1987)............................................................................23

*World Triathalon Corp. v. Dunbar*,
　　539 F.Supp.2d 1270 (D. Hawai'i 2008)......................................20, 21

**STATUTES**

15 U.S.C. § 1117.................................................... 1, 3, 5, 6, 19, 20, 21, 23

28 U.S.C. § 1920............................................................................3, 4

Lanham Act § 43(a) .............................................................................3

**OTHER AUTHORITIES**

Cal. Const. Art. XV, § 1....................................................................24

Fed. R. Civ. P. 54 ...........................................................................4, 3

## I.    INTRODUCTION

The jury in this case spoke loud and clear: Playtex deliberately sought to deceive consumers in making its "Proven #1 in Odor Control" and "#1 Recommended Among 1st Time Moms" advertising claims.  Pursuant to Ninth Circuit authority, this fact alone is sufficient to render this case an "exceptional" one, and therefore entitle Munchkin to an award of its attorneys fees (and expenses) under 15 U.S.C. § 1117.  The fact that Playtex aggressively litigated this action in a manner designed to drive up Munchkin's fees and expenses—despite knowing throughout that the Munchkin Arm & Hammer diaper pail, and not its own Elite pail, was "Proven #1" in odor control—simply confirms that this case is exceptional.

Munchkin's fee application as set forth herein and in Munchkin's associated filings is eminently reasonable.  The hourly rates charged by Munchkin's attorneys are well below the average rates charged by attorneys handling Lanham Act cases in the Los Angeles area.  Munchkin's attorneys also staffed the case judiciously and efficiently, and expended no more time than was reasonable in prosecuting and defending the case.  All told, Munchkin's well-documented fee request is well-below what one could reasonably expect in similar cases in this forum—particularly given the success that Munchkin achieved.  Munchkin's request for non-taxable expenses is also reasonable, and merely reflects normal, out-of-pocket expenses that attorneys typically charge fee-paying clients.

Finally, given that the jury found Playtex to be a deliberate false advertiser, Munchkin is also entitled to prejudgment interest on the monetary damages awarded by the jury.

## II.   CASE BACKGROUND

From the inception of this action, Playtex has lost nearly every issue— though each successive loss appeared only to make Playtex more aggressive in

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

pursuing its claims and defenses.  On January 24, 2011, just days after the initiation of this case, Playtex filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction seeking to prevent Munchkin from making its test-supported "New #1 in Odor Control" claim.  (*See* Dkt. No. 5). Munchkin timely responded to Playtex's application two days later, and the Court denied Playtex's application that same day, finding that Playtex had failed to establish that it was likely to succeed on its false advertising claim or that it faced likely irreparable harm.  (Dkt. No. 31).

On February 11, 2011, Playtex filed a Motion for Preliminary Injunction, largely repeating the arguments it had made in support of its application for a TRO. (*See* Dkt. No. 42).  After an initial hearing at which the Court tentatively denied Playtex's motion, Playtex requested additional briefing based on evidence it claimed to have obtained through pre-discovery depositions.  On April 11, this Court issued an order and opinion denying Playtex's Motion for Preliminary Injunction and finding that, "Playtex has failed to demonstrate that Munchkin's superiority claim is literally false."  (Dkt. No. 79, at 1).  Playtex then appealed the Court's denial of a preliminary injunction (Dkt. No. 80), and on October 26, 2011, the Ninth Circuit summarily affirmed this Court's April 11, 2011 order. (Declaration of Travis W. McCallon ("McCallon Decl."), Ex. 13).

After subsequent voluminous discovery, this action went to trial on July 10, 2012.[1]  On July 19, the jury returned a verdict in favor of Munchkin on its false advertising actions against Playtex's "Proven #1 In Odor Control" (Elite) and "#1

---

[1] The live causes of action at trial were: Munchkin's false advertising actions against Playtex's "Proven #1 In Odor Control" (Elite and Diaper Genie II) "#1 Recommended Among 1st Time Moms," and "American Baby" advertising claims; and Playtex's false advertising actions against Munchkin's "New #1 in Odor Control," "Trust No. 1 When It Comes to No. 2," and "Preferred by Moms 2 to 1" advertising claims.  (*See* Dkt. No. 340).

Recommended Among 1st Time Moms" claims, and in favor of Munchkin on all of Playtex's affirmative causes of action. (*See* Dkt. No. 340).

The jury specifically found that Playtex "deliberately sought to deceive consumers" with its "Proven #1 In Odor Control" and "#1 Recommended Among 1st Time Moms" claims, and that all of Playtex's advertising claims, including its "American Baby" claim, actually deceived or had a tendency to deceive consumers. (Dkt. No. 340, at 1(d)-4(d), 1(e)-4(e)).

After a separate damages phase, the jury awarded Munchkin a total of $13.492 million in damages. (*See* Dkt. No. 345).

## III.   LEGAL STANDARDS

"The court in exceptional cases may award reasonable attorney fees to the prevailing party" in a false advertising action under the Lanham Act. 15 U.S.C. § 1117(a). In the Ninth Circuit, "a case is exceptional within the meaning of 15 U.S.C. § 1117(a) where the infringement is willful, deliberate, knowing or malicious." *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1217 (9th Cir. 2003); *accord U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986) ("[W]e see no significant distinction between false advertising cases and other cases under Lanham Act § 43(a).").

In addition to attorneys' fees, a successful plaintiff in a Lanham Act action is also entitled to "the costs of the action."[2] 35 U.S.C. § 1117. Although courts may only tax the costs specified in 28 U.S.C. § 1920,[3] the Ninth Circuit has "repeatedly . . . allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Grove v. Wells Fargo*

---

[2] Federal Rule of Civil Procedure 54(d)(1) also provides that costs "should be allowed to the prevailing party."

[3] Separate and apart from the non-taxable expenses Munchkin seeks by way of the instant motion, Munchkin intends to seek reimbursement of its taxable costs via a separate Bill of Costs, filed in accordance with this District's local rules governing such applications.

*Financial California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).   Non-taxable expenses awarded pursuant to the Lanham Act's attorneys' fees provision may "include reasonable costs that the party cannot recover as the 'prevailing party'" under Fed. R. Civ. P. 54 or 28 U.S.C. § 1920.   *Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012).   Such expenses include "those out-of-pocket expenses that would normally be charged to a fee paying client."   *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted).

## IV.   ARGUMENT

### A.   This Case Is An "Exceptional" Case Entitling Munchkin to Its Reasonable Attorneys' Fees

Both Playtex's deliberate false advertising and its litigation conduct and bad faith pursuit of its claims render this case exceptional.

#### 1.   The Jury Found Deliberate False Advertising

The jury's express finding that Playtex deliberately sought to deceive consumers with its "Proven #1 In Odor Control" and "#1 Recommended Among 1st Time Moms" claims is itself sufficient to make this case exceptional and warrant an award of attorneys fees.   *See Earthquake Sound*, 352 F.3d at 1217. Indeed, there is no bad faith prerequisite to a fees award in the Ninth Circuit; rather, "willful or deliberate infringement will suffice."   *Id.* at 1217-18 (rejecting argument that knowing, willful, deliberate or malicious conduct does not per se show exceptionality).

An award of fees also is not dependent upon any injury to or damages obtained by a prevailing plaintiff, though the jury in this case clearly found significant injury to Munchkin and awarded damages accordingly.   *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) ("[T]he court must weigh the unlawfulness of defendants' conduct . . . ."); *Societe Civile Succession Richard Guiono v. Beseder Inc.*, No. 03-CV-1310, 2007 WL 3238703,

*17 (D. Ariz. Oct. 31, 2007) ("[T]he lack of actual injury to Defendant Renoir does not make Plaintiff's conduct, which includes falsely misrepresenting the authenticity of certain Renoir-Guino works and falsely altering certain works, to be any less deliberate or willful.").  In fact, separate and apart from its own injury and damages, a successful plaintiff in a Lanham Act action helps to "ameliorate a serious public harm" by exposing and eliminating messages that deceive consumers.  *TrafficSchool.com*, 653 F.3d at 832.  As such, the Ninth Circuit has held that "[i]t would be inequitable to force plaintiffs to bear the entire cost of enjoining defendants' willful deception when [an] injunction confers substantial benefits on the public."  *Id.*

In short, although the question of whether to award fees is an issue of law entrusted to the discretion of the district court, the "decision to make a fee award . . . flows quite naturally from the jury's finding of willful infringement and the legal standard for 'exceptional cases' under § 1117."  *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000).  As such, courts in this Circuit have not hesitated in awarding attorneys fees on the basis of a finding of deliberate false advertising.  *See e.g. National Products, Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1172 (W.D. Wash. 2010) ("Because the jury found that Gamber–Johnson's false advertisement was done deliberately, the court awards NPI its attorney's fees."); *Societe Civile Succession*, 2007 WL 3238703 at *17 ("[T]he jury, on special interrogatory, determined that Plaintiff 'willfully acted in a manner to deceive the public by engaging in false advertising in violation of the Lanham Act.' . . .  Under such circumstances, Defendant Renoir . . . qualifies to recover certain fees attributable to the prosecution of his false advertising counterclaim.").

Here, as noted above, the jury expressly answered "yes" to the verdict form questions asking whether Playtex "deliberately sought to deceive consumers" in making the "Proven #1 in Odor Control" and "#1 Recommended Among 1st Time

Moms" advertising claims.  (Dkt. No. 340 at 1(d) – 3(d)).  And the jury was fully justified in doing so.  Munchkin, for example, presented significant evidence at trial that Playtex ignored repeated indications that the Elite pail was a poor-performing pail that could not match the odor controlling performance of its own lower-end Diaper Genie II pail or the Munchkin pail, and continued to display the "Proven #1 in Odor Control" claim in the face of its own knowledge concerning the same.  (*See e.g.* McCallon Decl., Exs. 11, 12, 14; *id.*, Ex. 21 at 330:5 – 331:14, 333:18 – 334:3, Ex. 22 at 859:21 – 860:1).  In addition, although Playtex knowingly told consumers that its "Proven #1" claim applied under "the most rigorous conditions of emptying the pail," it never actually emptied the pail in any of its tests.  (*See e.g. id.*, Ex. 21 at 315:11-17, 332:3-19).   Taken together with the fact that Playtex placed the disclaimer for the claim in an inconspicuous location not often visible to consumers (*see e.g. id.*, Ex. 21 at 354:4-25), the jury could only reasonably conclude that Playtex deliberately sought to deceive consumers by issuing and continuing to display the "Proven #1" claim in the manner that it did.

Thus, the jury's proper finding that Playtex engaged in deliberate false advertising renders this case an exceptional one pursuant to 15 U.S.C. § 1117, and in and of itself warrants an award of Munchkin's reasonable attorneys' fees.

## 2.    Playtex's Litigation Conduct and Bad Faith Pursuit of Its Claims Further Support an Award of Attorneys' Fees

Although not necessary to trigger an award of attorneys' fees, Playtex's litigation conduct and bad faith pursuit of its claims further support an award of fees in this case.  "[A] finding that the losing party has acted in bad faith may provide evidence that the case is exceptional."  *Stephen W. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (internal citation omitted).  In this instance, Playtex **knew** that its Elite diaper pail was a poor-performer that was inferior to the Munchkin pail and **knew** that its own "Proven #1 in Odor Control"

advertising claim was false and misleading.  And yet, contrary to these known facts, Playtex aggressively demanded that Munchkin cease making its "New #1 in Odor Control" claim, concealed its internal tests from Munchkin and the Court while it sought preliminary relief, pursued its claims in this case in a manner specifically designed to bury Munchkin in a mountain of legal fees, and all-the-while continued to display its "Proven #1 in Odor Control" claim to consumers everywhere.

As discussed above, the Court is well-aware of certain Playtex internal tests introduced at trial that establish, among other things, that "Munchkin was significantly better than Diaper Genie II Elite at controlling diaper malodor" at certain test stages (*see* McCallon Decl., Ex. 11 at p. 6), and that Playtex never could establish that the Elite was superior to the Munchkin pail (*see id.*, Ex. 12).  But Playtex's actual knowledge of the inferiority of its pail goes much further than simply those tests introduced at trial, as no fewer than ***twelve (12)*** different Playtex internal tests clearly and repeatedly revealed to Playtex the inferiority of the Elite pail and/or the superiority of the Munchkin pail.  (*See id.*, Exs. 1-12).

For example,

(McCallon Decl., Exs. 2, 3 (emphasis added)).  Even as Playtex was conducting HPT 08-57 and 08-52, however, it had already made the decision to proceed to market with the Elite ***and*** to include the "Proven #1 in Odor Control" claim on the Elite's packaging.  (*See id.*, Exs. 2, 3, 14).

(*Id.*, Ex. 8 at p. 5).   Yet this test, like Playtex's pre-launch test, did not deter Playtex from continuing to use the "Proven #1 in Odor Control" claim in conjunction with the Elite.

Playtex had multiple examples of the Munchkin pail outperforming the Elite beyond those introduced at trial, as well.

(*Id.*, Ex. 5 at p. 7, Ex. 6 at p. 6).

In addition to all of its own testing that clearly established the "Proven #1 in Odor Control" claim to be false and misleading, the National Advertising Division of the Council of Better Business Bureaus ("NAD") in November 2010 recommended that Playtex cease labeling and advertising its products with the "Proven #1 in Odor Control" advertising claim, on the basis that the disclaimer associated with the claim "effectively contradict[s] the main message conveyed by the claim," and thus leaves the claim likely to mislead consumers. (McCallon Decl., Ex. 15 at p. 13).

Despite knowing the results of all of its internal tests concerning the Munchkin and Elite pails and knowing the NAD's position concerning its "Proven #1 in Odor Control" claim, Playtex on January 12, 2011, nevertheless sent a cease and desist letter to Munchkin demanding that Munchkin remove its "New #1 in

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

Odor Control" advertising claim from all of its diaper pails. (McCallon Decl., Ex. 16). Against its own knowledge that the Munchkin pail quite likely *was* the "New #1 in Odor Control," Playtex attempted to strong-arm Munchkin into removing that advertising claim from all in-store product packaging "within five business days," or face imminent legal recourse—a blatantly unreasonable, and in fact impossible, task. (*Id.*, Ex. 16, at p. 5).

Playtex's aggressive tactics and unreasonable view of its claims only escalated once this action commenced. As noted above, Playtex immediately filed an Ex Parte Application for Temporary Restraining Order, followed by a separate Motion for Preliminary Injunction. After the Court denied both of these motions, Playtex appealed to the Ninth Circuit, which also summarily rejected Playtex's arguments and affirmed this Court's denial of a preliminary injunction.

Notably, although Playtex itself knew that it was challenging an advertising claim that its own tests had already revealed was most likely true, it did everything in its power to shield its own tests from the Court while it aggressively sought preliminary relief. Indeed, throughout Playtex's repeated efforts to obtain preliminary relief, it not once disclosed the results of any of its multitude of internal tests. In fact, Playtex affirmatively stymied Munchkin when Munchkin sought to obtain such information—as well as any other information beyond what Playtex unilaterally determined was relevant—during the depositions conducted in conjunction with Playtex's Motion for Preliminary Injunction.

When Munchkin questioned Mr. Sweetbaum about Playtex's internal tests, for example, he responded, "I cannot recall specifics of R&D technical studies." (McCallon Decl., Ex. 17 at 89:18-22). When Munchkin asked Mr. Rousso at that time whether he believed that the Playtex diaper pails and the Munchkin pail controlled odor equally well, he made no mention of Playtex's internal tests. (*Id.*, Ex. 18 at 28:18-25). In fact, counsel for Playtex objected to such questioning and

explained that "testing the [sic] Playtex has done vis-à-vis the products is not at issue here."  (*Id.*, Ex. 18 at 29:2-18).  Similarly, during the deposition of Dr. Ennis, counsel for Playtex instructed Dr. Ennis not to answer any questions about Playtex's "Proven #1 in Odor Control" claim (*Id.*, Ex. 19 at 119:8 – 124:14, 128:6-11) or the NAD's ruling concerning that claim (*Id.*, Ex. 19 at 127:22 – 128:4, 130:5-20), among other things.  And Playtex even went so far as to terminate Dr. Heber's deposition on the basis that Munchkin was not permitted to ask Dr. Heber any questions about Dr. Ennis' declaration.  (*Id.*, Ex. 20 at 78:2 – 82:9).  In short, Playtex knew that a full picture of the relevant facts would be a death knell to its ability to obtain preliminary relief, and so it went out of its way to ensure that the record before the Court remained incomplete.

Not surprisingly, Playtex's repeated efforts to obtain far-reaching preliminary relief resulted in significant legal expenses for Munchkin—expenses Playtex no doubt hoped would lead Munchkin to capitulate.  Indeed, based upon Playtex's refusal to negotiate reasonably for a settlement, Playtex apparently desired nothing short of complete capitulation by Munchkin.  For example, during an April 22, 2011 mediation, Playtex rejected Munchkin's settlement offer that would have limited Playtex's liability to *a maximum of $100,000* (and a minimum of zero), and still given Playtex the opportunity to challenge Munchkin's "New #1 in Odor Control" claim before the NAD.  (Declaration of Steven B. Dunn ("Dunn Decl."), ¶¶ 2, 5-6).  Playtex's refusal to accept such an offer is almost inexplicable apart from bad faith, given that the Court at that time had already denied Playtex's motions for a TRO and preliminary injunction, and Playtex had not yet disclosed its devastating internal tests to Munchkin.  (*Id.*, ¶ 7).

Through all of this—Playtex's unfavorable internal testing results, its aggressive pursuit of preliminary relief, and refusal to negotiate reasonably for settlement—Playtex's "Proven #1 in Odor Control" claim remained in the market.

And not simply on small, third-party websites, either. Indeed, the claim continued to appear **on Playtex's own website** until at least late-August 2011, over eight months after Playtex first sought a TRO and over ten months after the NAD found the claim to be misleading. (McCallon Decl., Ex. 23, at p. 2).

Playtex's pre-suit knowledge of the Elite pail's inferiority, combined with its aggressive litigation tactics, refusal to reasonably negotiate a settlement, and feigned effort to remove the "Proven #1 in Odor Control" claim from the market, together form a sufficient independent basis for the Court to declare this case exceptional. Indeed, this District has previously found the exceptional case standard satisfied where a party pursues an action with knowledge that it lacks the evidence to succeed. *See Spalding Laboratories, Inc. v. Arizona Biological Control, Inc.*, No. 06-CV-1157, 2008 WL 2227501, *2 (C.D. Cal. May 28, 2008) ("[T]his case, while perhaps not initially 'exceptional,' became so when Spalding continued to pursue its false advertising claim after knowing it no longer had sufficient evidence to prevail."); *see O'Brien Intl., Inc. v. Mitch, et al.*, 209 U.S.P.Q. 212, 221 (N.D. Cal. 1980) (finding case exceptional when defendant refused settlement with the hope that plaintiff "would be reluctant to incur the expense of litigation and that this would shield him"). Playtex's behavior here is especially egregious, given that it not only lacked the evidence to pursue its claims, but possessed affirmative evidence that undercut its claims—and yet it aggressively and unreasonably pursued them anyway. For this reason, as well, an award of Munchkin's reasonable attorneys' fees is entirely proper.

### B. Munchkin's Fee Application Is Reasonable

In determining the proper amount of an attorneys' fees award, a court "must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). This lodestar figure is a

"presumptively reasonable" total fee, although the court may adjust the lodestar figure based upon the factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), to the extent such factors were not already considered in arriving at the lodestar figure.[4]  *Intel Corp.*, 6 F.3d at 622.

The appropriate lodestar figure in this case for fees attributable to Lathrop & Gage is $1,649,997.40.  As explained in detail below, this amount represents both a reasonable hourly rate and a reasonable amount of time expended, and no other factors warrant decreasing such an amount.

### 1.     Reasonable Hourly Rates

The reasonable hourly rate used for the lodestar calculation is "the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  "[T]he relevant community is the forum in which the district court sits."  *Id.*  And for evidence of what the prevailing rate is within a particular community, "courts in California look to fee awards in similar actions and the prevailing billing rates of comparable private attorneys."  *James v. Cardinal Health 200 Inc.*, No. 09-CV-695, 2010 WL 4796931, *2 (C.D. Cal. Nov. 22, 2010).

As detailed in the Declaration of R. Cameron Garrison ("Garrison Decl."), attached hereto, the hourly rates for the three Lathrop & Gage attorneys primarily involved in this case—Mr. Garrison, Mr. Barnard, and Mr. McCallon—ranged from $216 to $370 over the nearly 20 months that this action has been pending.

---

[4] The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) the contingent or fixed nature of the fee; (7) the limitations imposed by the client or the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature of the professional relationship with the client; and (12) awards in similar cases.  526 F.2d at 70.

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

(Garrison Decl., ¶ 9).  The rate for Mr. Garrison, a partner with almost ten (10) years of experience, ranged from $244 to $335; the rate for Mr. Barnard, a partner with over fifteen (15) years of experience, ranged from $288 to $370; and the rate for Mr. McCallon, who was both an associate and a partner during the course of this action and who has nearly eight (8) years of experience, ranged from $216 to $290.  (*Id.*, ¶¶ 10-12, Exs. 4-6).  Mr. Garrison, Mr. Barnard, and Mr. McCallon all work exclusively in the area of intellectual property litigation.[5]  (*Id.*).  As also detailed in the Garrison Declaration and the accompanying biographies, all three have been publicly recognized as top attorneys in their community, and their level of skill and experience in similar cases renders the hourly rates charged for their work on this case eminently reasonable.  (*Id.*).

Indeed, the hourly rates charged by Lathrop & Gage attorneys in this case are well below rates that courts have found to be reasonable for intellectual property cases in Los Angeles, which is the relevant community for purposes of the lodestar calculation.  In *Love v. Mail on Sunday*, No. 05-CV-7798, 2007 WL 2709975, *8 (C.D. Cal. Sept.7, 2007), an intellectual property action involving Lanham Act claims, this District approved 2007 rates that ranged from $305 per hour for a junior associate, to $460 per hour for a senior associate, to $540 and $690 per hour for partners—all rates that exceed those charged by Lathrop & Gage in this case.[6] *See also e.g. Intamin, Ltd. v. Magnetar Technologies Corp.*, No. 04-CV-511, 2009 WL 5215393, *2 (C.D. Cal. Dec. 28, 2009) (approving rates in intellectual property case for 2003-04 time frame ranging from $195 to $300 for associates and $380 to $510 for partners).

---

[5] Lathrop & Gage is a well-respected firm with over 300 attorneys and a significant intellectual property practice.

[6] The *Love* court also approved hourly rates for senior paralegals that ranged from $220 to $245.  2007 WL 2709975 at *8.

Lathrop & Gage's rates are also well below the relevant rates reported by comparable private attorneys in surveys conducted by the American Intellectual Property Lawyers Association ("AIPLA"), which courts in this District and Circuit have specifically looked to in ascertaining reasonable hourly rates in intellectual property actions. *See e.g. Intamin*, 2009 WL 5215393 at *2 (citing and relying upon 2009 AIPLA survey); *see also e.g. Autodesk, Inc. v. Flores*, No. 10-CV-1917, 2011 WL 1884694, *2 (N.D. Cal. May 18, 2011) ("Autodesk has also submitted an excerpt from a report of the American Intellectual Property Law Association ('AIPLA'), to which courts frequently refer to determine reasonable fee rates in intellectual property cases."). According to the 2011 AIPLA survey (which reports 2010 data, and is the most recent available), the median minimum hourly rate for intellectual property work in Los Angeles is $306, and the median maximum hourly rate is $468 per hour. (Garrison Decl., ¶ 6, Ex. 2). The average hourly rate for a partner practicing intellectual property law at a private firm in Los Angeles is $500, while and the average hourly rate for an associate practicing intellectual property law at a private firm in Los Angeles is $383 per hour. (*Id.*). The three Lathrop & Gage attorneys primarily involved in this case billed at significantly lower rates than these.

In addition to the three primary Lathrop & Gage attorneys, Munchkin also relied on other skilled partners, associates, paralegals, and staff from the Lathrop & Gage firm. All additional timekeepers that recorded and billed time to this matter are identified in the Garrison Declaration, with biographies and explanations attached as appropriate. (*See* Garrison Decl., ¶¶ 9-21). Based upon this information, as well as the case law and survey data discussed above, Munchkin submits that the hourly rates charged by each of these additional timekeepers is reasonable and fully justified by each individual's respective level of skill and expertise.

### 2.   Reasonable Amount of Hours

The time expended by Lathrop & Gage on this action from January 2011 through July 2012 was 6,896.10 hours.[7]   This amount, like Lathrop & Gage's hourly rates, is reasonable, particularly given the nature of the action and the resounding success achieved by Munchkin at virtually every stage of the action.

Although the "fee applicant bears the burden of documenting the appropriate hours expended in the litigation," the "party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).  This District has held that a "summary chart and the daily time entries" for billing timekeepers are "sufficient evidence of the tasks performed and fees charged to support [a] fee request." *Love*, 2007 WL 2709975 at *9.  Moreover, the "verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." *James*, 2010 WL 4796931 at *3 (quoting *Hosford v. Bd. of Tr. of California State Univ.*, 33 Cal.Rptr.3d 644, 673 (Cal. Ct. App. 2005)).   The Garrison Declaration attaches both a summary of each of Lathrop & Gage's timekeepers' time billed in this case, as well as the individual monthly invoices sent from Lathrop & Gage to Munchkin, all of which include a complete listing of the narrative descriptions of work performed for all fees, listed by date and timekeeper. (Garrison Decl., Exs. 1, 3).

The documentation supplied by Munchkin establishes that Lathrop & Gage allocated work in this case to attorneys, paralegals, and staff judiciously and

---

[7]   Munchkin reserves its right to submit—and anticipates it will submit—a separate, supplemental motion for attorneys' fees to account for fees and costs incurred after July 2012, including fees incurred for drafting the instant motion and responding to Playtex's post-trial motions.  (Garrison Decl., ¶ 27).

efficiently.  In an effort to reduce legal fees and costs to Munchkin, Lathrop & Gage used paralegals, litigation support specialists, and other similar case assistants at lower billing rates to ensure that the attorneys' work was kept to tasks that warranted their higher legal fees. (Garrison Decl., ¶ 17).  The time that was billed was directly tied to the resolution of issues pertinent to this action, including discovery, hearings or trial, legal research, and drafting legal correspondence, motions, and briefs. (*Id.*).  And Lathrop & Gage's billing attorney applied proper discretion and billing judgment to each and every invoice submitted to Munchkin. (*Id.*, ¶ 3).  In total, the amount of time expended by Lathrop & Gage is commensurate with the scope and complexity of this case, which has been pending for nearly 20 months now.

Notably, and in addition to the normal, day-to-day work generated by a case of this size, this case necessitated that Lathrop & Gage complete a number of uniquely time-intensive tasks, including:

- Responding to Playtex's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction;

- Responding to Playtex's Motion for Preliminary Injunction, then conducting preliminary and expert depositions and responding to supplemental briefing filed by Playtex;

- Responding to Playtex's appeal of the Court's denial of its Motion for Preliminary Injunction;

- Conducting and responding to extensive fact and expert discovery, including overseeing the production of a large volume of documents, taking and defending numerous depositions, and filing and responding to motions to compel; and

- Conducting a nearly two-week jury trial.

The results that Lathrop & Gage achieved on behalf of Munchkin also justify the time expended.  Munchkin obtained a complete victory at virtually every stage of this action, including with respect to all of the time-intensive tasks noted above. These results warrant a full award of attorneys' fees. *See Hensley v. Eckerhart*, 461

U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."); *Love*, 2007 WL 2709975 at \*10 ("[T]he greater amount of time defense counsel committed to this case was reflected in the higher quality of their work.").

Finally, both the Court and the parties have already recognized that the Lanham Act claims in this case fully overlap with the corresponding state law claims pled by the parties, and therefore no apportionment of fees is required.  The Ninth Circuit does not require an apportionment of fees in Lanham Act cases where "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims."  *Gracie*, 217 F.3d at 1069 (internal quotation and emphasis omitted).

Here, the parties both agreed in conjunction with their jury instruction submissions that no separate instructions were necessary for the parties' state statutory and common law false advertising claims, given their overlap with the Lanham Act (*see* Dkt. No. 302), and the Court's jury instructions and verdict form took that fact into account (*see* Dkt. No. 332).[8]  The Ninth Circuit and other district courts in this Circuit have found in similar situations that state law claims that correspond to primary Lanham Act claims are inextricably intertwined with the Lanham Act claims for purposes of awarding fees.  *See e.g. Gracie v. Gracie*, 157 Fed. Appx. 967, 969, 2005 WL 3037448 (9th Cir. 2005) (unpublished) ("The district court did not abuse its discretion in finding that Appellants' Lanham Act Claims and non-Lanham Act claims were inextricably intertwined such that apportionment of fees is impossible."); *Cyclone USA, Inc. v. LL & C Dealer Services, LLC*, No. 03-CV-992, 2010 WL 2104963, \*6 (C.D. Cal. May 24, 2010) ("[T]he inherent interrelationship and factual overlap among Cyclone USA's

---

[8] All of the parties' various defenses in this case, for which the Court did not instruct the jury, were all similarly intertwined with the opposing parties' Lanham Act claims.

Lanham Act claims and the non-Lanham Act claims and counterclaims alleged by the parties was substantial."). Thus, Munchkin is entitled to the full lodestar figure for fees.

### 3. Additional Factors Justifying Munchkin's Fees

Other *Kerr* factors not subsumed in the lodestar amount also justify a full recovery of fees for Munchkin. (*See* n. 4, *supra*). This District in *Love v. Mail on Sunday* found no need to adjust the lodestar figure downward where the staffing of the case "was well-calibrated to the complexity and numerosity of the issues," the case required "significant legal skill," the "hourly rates charged [were] within the norm for this service in this region," and the party "obtained a complete victory." 2007 WL 2709975 at *12. Those things are all equally true here. In addition, this matter has occupied a significant portion of several attorneys' calendars during the past 20 months. (Garrison Decl., ¶ 7). In many instances, the tasks in this case were subject to tight—or even emergency—deadlines, requiring the immediate and constant attention of one or more attorneys. (*Id.*); *see Kerr*, 526 F.2d at 69-70 (relevant factors include the preclusion of other employment due to acceptance of the case).

Finally, it is worth noting that the total size of the lodestar figure is reasonable. At approximately $1.650 million, the figure represents only a fraction of the total damages award that Munchkin obtained, and it is also less than the amount of damages that Playtex sought against Munchkin. The Ninth Circuit has looked to the ratio between the fee amount and the amount at issue in awarding fees, and has noted that numerous cases have upheld fee awards even when they exceed damages. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158-59 (9th Cir. 2002). In fact, the Ninth Circuit in *Cairns* affirmed a fees award of over $2.3 million in a Lanham Act case of similar length to this one. *Id.* at 1144-45, 1159.

All factors considered, the lodestar figure in this case is reasonable and not subject to adjustment.

### C.      Munchkin Is Entitled to Its Reasonable Non-Taxable Expenses

Pursuant to 15 U.S.C. § 1117's express costs provision and/or this Court's authority to award costs based upon section 1117's attorneys' fees provision, Munchkin is also entitled to $354,743.52 in non-taxable expenses. (Garrison Decl., ¶ 22). These non-taxable expenses are all recoverable because they constitute "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris*, 24 F.3d at 19; *see Grove*, 606 F.3d at 580; *B & H Mfg. Co., Inc. v. Lyn E. Bright*, No. 01-CV-6619, 2006 WL 547975, *12 (E.D. Cal. Mar. 3, 2006) ("Plaintiff is entitled to expenses that are normally billed to fee-paying clients.").

The Garrison Declaration attaches detailed breakdowns and supporting documentation for the non-taxable expenses reasonably incurred and ultimately billed to Munchkin in ten different categories. (Garrison Decl., ¶¶ 23-24, Exs. 13-23). Below is a summary of the amount of expenses for each of these categories, as well as citations to case law that justify recoupment of expenses for each category. A brief discussion follows concerning the two most significant categories, document production and travel.

- **Court fees not taxed as costs: $1,001.00** (*Id.*, ¶ 24, Ex. 15). *See e.g. National Warranty Ins. Co. v. Greenfield*, No. 97-CV-1654, 2001 WL 34045734, *9 (D. Or. Feb. 8, 2001) (awarding expenses for "the filing fee for admission *pro hac vice*");

- **Copies not taxed as costs: $35,684.13** (*Id.*, ¶ 24, Ex. 14). *See e.g. Agster v. Maricopa County*, 486 F. Supp. 2d 1005, 1018 (D. Ariz. Mar. 30, 2007) (awarding "the full amount of copying expenses").

- **Depositions (video): $24,959.14** (*Id.*, ¶ 24, Ex. 16). *See e.g. Agster* 486 F. Supp. 2d at 1017-18 (awarding expenses for videotaped depositions because "the cost of videotaping a deposition is a fee for which an attorney would normally bill a client") (citing *Williams v. Rockwell Intern. Corp.*, No. 96-CV-55339, 1997 WL 306456, *3 (9th Cir.1997) (upholding award of costs for videotaped deposition));

- **Deliveries/Courier/Postage: $9,112.11** (*Id.*, ¶ 24, Ex. 17).  *See e.g. Seven Signatures General Partnership v. Irongate Azrep BW LLC*, No. 11-CV-500, 2012 WL 1656972, *12 (D. Hawai'i May 9, 2012) (awarding expenses for Federal Express and local delivery charges); *World Triathalon Corp. v. Dunbar*, 539 F.Supp.2d 1270, 1290 (D. Hawai'i 2008) (awarding postage and mailing expenses as "the types of costs contemplated by § 1117(a)");

- **Document Production: $130,602.40** (*Id.*, ¶ 24, Ex. 18).  *See Jardin v. DATAllegro, Inc.*, 08-CV-1462, 2011 WL 4835742, *6-7 (S.D. Cal. Oct. 12, 2011) (awarding recovery of expenses for the conversion of e-data and related project management); *Erase, LLC v. Spansion, Inc.*, No. 10-CV-481, 2010 WL 5093945, *5 (N.D. Tex. Nov. 10, 2010) (awarding recovery of "$197,637.72 in costs for creating TIFF/OCR images of documents");

- **Professionals (mediation and trial demonstratives/visual aids): $36,409.23** (*Id.*, ¶ 24, Ex. 20).  *Ko Olina Development, LLC v. Centex Homes*, No. 09-CV-272, 2011 WL 1235548, *15-16 (D. Hawai'i Mar. 29, 2011) (awarding recovery of mediation fees); *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005) (awarding recovery of expenses for "blow-ups, digital presentations of scanned documents, and other computer graphics");

- **Computerized research: $1,117.26** (*Id.*, ¶ 24, Ex. 21).  *See e.g. B & H Mfg.*, 2006 WL 547975 at *16 (awarding expenses for Westlaw and Lexis research).

- **Telephone/communications: $79.88** (*Id.*, ¶ 24, Ex. 22).  *See e.g. Agster*, 486 F. Supp. 2d at 1018-19 (awarding expenses for long distance telephone charges and cell phone charges).

- **Travel: $114,883.93** (*Id.*, ¶ 24, Ex. 23).  *See e.g. Thalheimer v. City of San Diego*, No. 09-CV-2862, 2012 WL 1463635, *9 (S.D. Cal. April 16, 2012) ("[N]ecessary travel expenses are recoverable." (citing *Grove*, 606 F.3d at 581)).

- **Miscellaneous: $894.44** (*Id.*, ¶ 24, Ex. 19).

Munchkin's expenses for document production arise out of its use of third party vendors to process and review Munchkin's documents prior to production to Playtex.  Munchkin utilized third parties for two primary reasons: (1) to expedite the production of a large number of documents; and (2) to control costs.  (Garrison

Decl., ¶ 25),  Indeed, because Munchkin utilized a third party vendor charging a fraction of the rates that Lathrop & Gage's attorneys charge to review documents, Munchkin was able to significantly reduce the attorneys' fees expended on document review and related tasks.  (*Id.*).  Thus, at least as to the expenses billed to Munchkin by Mindcrest, the third party that conducted the review (*see id.*, Ex. 18), Munchkin's document production expenses would otherwise appear—in a much larger amount—as attorneys' fees.  For this reason alone, Munchkin is entitled to recovery of these charges as non-taxable expenses.

Moreover, "courts have allowed a prevailing party to recover the costs of converting paper documents into electronic files where the parties agreed that responsive documents would be produced in an electronic format." *Fast Memory Erase*, 2010 WL 5093945 at *5; *see Jardin*, 2011 WL 4835742 at *6-7.  Courts have also found that where "a third-party technician is engaged to perform duties limited to technical issues related to the physical production of information," the related expenses are recoverable.  *See Jardin*, 2011 WL 4835742 at *8-9 (taxing such expenses as costs).  The parties here agreed to produce documents in text-searchable, single-page TIFF format (Garrison Decl., ¶ 25), and Munchkin is therefore also entitled to recover expenses billed to it by Encore, the third party that managed the technical processing of Munchkin documents into that format.  (*See id.*, Ex. 18).

As for Munchkin's travel expenses, courts routinely hold that such expenses are recoverable as expenses that are normally charged to paying clients.  *See e.g. Thalheimer*, 2012 WL 1463635 at *9 ("[N]ecessary travel expenses are recoverable."); *World Triathalon*, 539 F. Supp. 2d at 1290 (travel costs "are allowable under § 1117(a)"); *In re Immune Response*, 497 F. Supp. 2d at 1177-78 (allowing recovery of expenses for "meals, hotels, and transportation"); *National Warranty*, 2001 WL 34045734 at *9 (travel expenses recoverable as an expense

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

that "would normally be charged to a fee paying client").  The Ninth Circuit itself has "affirmed an award of travel expenses under a statute providing district courts with discretion to allow the prevailing party reasonable attorney's fees as part of the costs of the action."  *Grove*, 606 F.3d at 581.

Travel expenses were a necessity for all parties and attorneys involved in this case, particularly given the respective parties' locations on opposite coasts, the length and scope of the action, and the fact that the action resulted in a two-week trial involving a number of attorneys and witnesses.  If anything, Munchkin's use of Lathrop & Gage attorneys located in Kansas City proved efficient for traversing the country for this case's significant deposition discovery and trial.  In addition, in order to keep its expenses down, Munchkin's in-house counsel defended and conducted many of the depositions that took place in California, and also attended hearings in place of an additional attorney from Lathrop & Gage; any expenses associated with her appearance at those depositions and hearings are not subject to Munchkin's current motion.  Thus, Munchkin submits that all of its travel expenses were not only reasonably necessary to prosecute and defend this action, but reflect Munchkin's effort to contain such expenses to the greatest extent possible. Munchkin is therefore entitled to full recovery of its travel expenses.

**D.     Munchkin Is Also Entitled to Fees and Costs Billed by the R. Rex Parris Firm**

Munchkin also submits that it is entitled to recovery of the fees and expenses charged and incurred by the R. Rex Parris firm, which worked on this case from approximately January 2012 through early July 2012.  An explanation of these fees and expenses and justification for their recovery can be found in the attached Declarations of R. Rex Parris and Alexander R. Wheeler, and related exhibits.

**E.      Munchkin Is Entitled to An Award of Prejudgment Interest**

Finally, Munchkin is entitled to an award of prejudgment interest.  Although Section 35(a) of the Lanham Act is silent on this issue, the Supreme Court has explained that, even though a controlling statute may be silent about prejudgment interest as a remedy, the party winning a money judgment is entitled to prejudgment interest on a federal claim "as an element of complete compensation." *West Virginia v. U.S.*, 479 U.S. 305, 310 (1987); *see Drumm v. Morningstar, Inc.*, 695 F.Supp.2d 1014, 1022 (N.D. Cal. 2010) ("The purpose of prejudgment interest 'is to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury.'") (citation omitted).

While a number of courts have adopted "a preference, if not a presumption, for prejudgment interest" in the context of federal claims[9] (*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000)), others reserve awards of prejudgment interest in Lanham Act actions for those cases that are deemed "exceptional."  *See Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990) ("Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional cases.'").  Because this case is exceptional, as discussed in detail above, Munchkin is entitled to an award of prejudgment interest under either approach—presumptive or exceptional.

---

[9] Courts routinely award prejudgment interest in Lanham Act cases.  *See e.g. United Phosphorus*, 205 F.3d at 1236 (reversing the district court's denial of prejudgment interest on claims arising from violations of the Lanham Act); *R.J. Reynolds Tobacco Co.*, 75 U.S.P.Q.2d 1206 (N.D. Ill. 2005) (awarding prejudgment interest and noting that one of the primary goals of the Lanham Act is to prevent violations "from being a financially attractive way of conducting business"); *Gillette Co. v. Wilkinson Sword, Inc.*, 795 F. Supp. 662, 664 (S.D.N.Y. 1991) (awarding prejudgment interest on a false advertising claim under the Lanham Act), *order vacated on other grounds*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"There is no federal statutory rate for prejudgment interest," so the rate imposed for prejudgment interest is also left to the court's discretion. *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Nevertheless, courts "often use the statutory rate in the state in which they sit to calculate an award of prejudgment interest." *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 757 F. Supp 1101, 1103 (S.D. Cal. 1990) (internal citation omitted). In California, the statutory rate is 7% per annum.   *See* California under Cal. Const. Art. XV, § 1.

As result, Munchkin is entitled to prejudgment interest at the California state statutory rate of seven percent (7.00%) per annum, calculated from January 18, 2011 through July 20, 2012.  *See e.g. Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 723 F. Supp. 2d 1284, 1330 (S.D. Cal. 2010) (applying the California statutory rate to determine a prejudgment interest award in patent case and rejecting argument that prime rate should be used); *In re Hayes Microcomputer Products, Inc. Pat. Litig.*, 766 F. Supp. 818, 824 (N.D. Cal. 1991) *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992) (party failed to "convince the court of the necessity to depart from the California statutory interest rate of seven (7) percent" when determining prejudgment interest).   Given the monetary damages awarded by the jury, such interest amounts to $1,423,128.77.  (*See* Garrison Decl., ¶ 26, Ex. Ex. 24).

## V.   CONCLUSION

Playtex deliberately sought to deceive consumers with *two* separate false advertising statements.   Its litigation strategy, like its false statements, revealed little in the way of good faith.  Munchkin therefore respectfully requests that the Court declare this case exceptional and award Munchkin its reasonable attorneys' fees, non-taxable expenses, and prejudgment interest on the jury's damages award.

**MUNCHKIN'S MOTION FOR ATTORNEYS FEES**

DATED:  August 16, 2012          LATHROP & GAGE LLP

By:  /s/ Jeffrey Grant
          Cameron Garrison (*pro hac vice*)
          David R. Barnard (*pro hac vice*)
          Travis W. McCallon (*pro hac vice*)
          John Shaeffer
          Jeffrey Grant
          Petty Tsay Rader
          Attorneys for Plaintiff

          MUNCHKIN, INC.